# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10474
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2015

Lyle W. Cayce
Clerk

DARRYL J. BERRY; ROSALINDA BERRY,

> Plaintiffs - Appellants Cross-Appellees

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; IBM LENDER
BUSINESS PROCESS SERVICES, INCORPORATED,

> Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1288

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:[*]

In this real estate foreclosure case, plaintiffs-appellants Darryl and Rosalinda Berry (collectively, the "Berrys") challenge the district court's grant of summary judgment in favor of the defendants-appellees (collectively, the "Lenders").[1]  For the reasons below, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Though the caption lists "IBM Lender Business Process Services, Inc." as a defendant, Lender Business Process Services, Inc. ("LBPS") voluntarily identified itself as the proper co-defendant in the notice of removal.

No. 14-10474

## FACTS AND PROCEEDINGS

A. Mortgage and Foreclosure

The Berrys purchased property in Dallas, Texas, and executed the related note and deed of trust in November 2007. The note was payable to CTX Mortgage Company and the Deed of Trust listed CTX as the lender. The Deed of Trust was later assigned to Fannie Mae. Chase Home Finance, LLC ("Chase") became the mortgage servicer. In 2009, after these assignments, the Berrys discovered that they were in default, despite their claim that they had not missed any payments. Chase subsequently confirmed that four of the Berrys' money orders had not been processed because they were "not legible," and the Berrys were in default.

The Berrys attempted to pay the arrears but underpaid because they did not factor in the fees and penalties assessed by Chase. After speaking with Chase about a loan modification, the Berrys signed a Trial Payment Plan ("TPP"). Chase did not sign the TPP and never confirmed that the Berrys had been accepted into the loan modification program.[2] The Berrys' mortgage was transferred to a new lender, IBM Lender Business Process Services, Inc. ("LBPS") before the TPP was approved or denied by Chase. The Berrys applied for a loan modification with LBPS and were told it would be processed. It never was. Instead, the Berrys received a foreclosure notice.

B. District Court Proceedings

The Berrys filed a complaint in the County Court of Dallas County on June 6, 2011. They alleged, *inter alia*, that the Lenders intentionally misled them, improperly accounted for their payments, violated the Texas Debt Collection Practices Act ("TDCA"), and breached their duty of good faith and

---

[2] The Berrys allege that, when they asked Chase about the status of the modification, they were simply told that the documents were "not ready," suggesting, to them, that they had reason to believe they would be approved for the modification.

2

fair dealing. The Lenders removed to the United States District Court for the Northern District of Texas and filed a counterclaim, alleging breach of contract, suit on the note, and seeking attorneys' fees. The Lenders filed a motion for summary judgment on July 16, 2012, which the district court granted in-part as to the Berrys' claims on March 29, 2013. But, the district court denied the Lenders' counterclaims. The Lenders filed a second motion for summary judgment on May 3, 2013, to which they attached evidence showing that Fannie Mae was the holder and owner of the note. The court granted the second motion for summary judgment on March 13, 2014. The Berrys filed a timely appeal.

## DISCUSSION

A. The TPP Contract

The Berrys challenge the district court's holding that the TPP was not a binding contract because Chase never signed it. This court has previously held that if a "TPP expressly requires that before the contract is final, the lender must send a signed copy to the borrower," a contract is not created when the borrower signs the TPP and begins to perform. *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, at 554 (5th Cir. 2012).

Here, the TPP states:

> I understand that after I sign and return one copy of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. **This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.**

There is no evidence in the record that the Berrys ever received a fully executed copy of the TPP from Chase. The only copy of the TPP in the record contains Darryl Berry's signature and a blank signature line for Chase. Contrary to the Berrys' argument, the acknowledgement letter from Chase confirming

receipt of the Berrys' TPP application shows that Chase did not intend to be bound by the TPP until it returned a signed copy of the agreement. There is, therefore, no genuine issue of material fact as to whether the parties entered a binding TPP contract. We affirm the district court.

B. The Texas Debt Collection Act

The Berrys also allege that there is a genuine issue of material fact concerning the Lenders' alleged breach of the TDCA. The Berrys cite four sections of the Act, Tex. Fin. Code §§ 392.301(a)(8), 392.302(a)(2), and 392.304(a)(8) & (19). The Berrys do not, however, offer any evidence or citation to the record in support of their position that there is an issue of material fact as to §§ 392.301(a)(8), 392.302(a)(2). As to § 392.304(a)(8) & (19), the Berrys first allege that the TPP was a binding contract. For the reasons explained above, this is not a genuine issue of material fact, *supra*.

The Berrys also allege that there was a genuine issue of material fact concerning whether the Lenders acted fraudulently by sending the Berrys a "Notice of Defaulted Mortgage" on May 8, 2009, stating they owed $3,668.70, and then a "Mortgage Loan Statement" the next day, on May 9, stating that they owed $4,289.62. The mere existence of these two documents, however, does not demonstrate fraud or deceptive means as required under the TDCA. First, the Berrys offer no evidence that these documents are meant to convey the same information. They assume that the documents are referencing the same debt or amount owed. But, in any given account or mortgage there will be more than one amount owed. What is owed as a minimum payment and what is owed to eliminate an arrearage, for example, are two different things. The fact that the documents have different names further suggests that they serve distinct purposes. In sum, even drawing all reasonable inferences in favor of the Berrys, there is no genuine issue whether the Lenders used fraud

No. 14-10474

or deceit in violation of the TDCA.  Hence, we affirm the district court's grant of summary judgment concerning the Lenders alleged violation of the TDCA.

C.  The Request for an Accounting and Declaratory Judgment and the Grant of Lender's Counterclaim

The Berrys' other issues are not sufficiently briefed.  The Berrys offer no law or analysis in support of these issues, and thus, they are not properly before this court.  Fed. R. App. P. 28(a)(8) requires that the argument section of an appellant's brief contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Under this rule, the Berrys' pleadings regarding their request for an accounting and the Lenders' counterclaim are not sufficient to raise a claim.

## CONCLUSION

The judgment of dismissal is AFFIRMED.

5